I would like to welcome Judge Jennifer Groves of the Court of International Trade, sitting with us, contributing her time to the Second Circuit. Thank you. Thank you. Happy to be here. And I will call the first case, which is Marilyn Dow v. Frontline Asset Strategies. Thank you. Thank you. May it please the Court, my name is Benjamin Wolfe, and I represent the plaintiff appellant, Marilyn Dow. Although Ms. Dow's brief explains why the facts in Taylor v. Financial Recovery Services are readily distinguishable from her FDCPA claims against Frontline Asset Strategies here, I appreciate that I have the task of convincing this Court that the district judge's opinion should be reversed in light of Taylor. To that end, Ms. Dow's case is more akin to the facts in the Eastern District of New York's Islam v. American Recovery Services decision. Are you asking us to accept a district court case over one from our court? I think the facts are radically different in Taylor, and that's why I concede, or at least say that the Islam case from the Eastern District, the facts are much more in line with this one. How are they radically different? Between this and Taylor, Judge Park? Well, number one, the letters are completely different, and it's not just form over substance, so it's not just about the placement of a logo or a telephone number, but we're talking about that prominent itemization front and center on the debt collection letter, which is completely absent from what this Court considered in Taylor. And as you can see from that letter, it's got all of the subject charges, the interest being $0 and the so-called total non-interest charges or fees accrued being $0. Well, here it listed the interest and the charges and fees as zero. In Taylor, you're saying it didn't have those at all. That's correct. Isn't that actually more informative to the debtor here, that, in fact, the interest and the fees and charges are zero? Doesn't that tell you that it's static? Maybe. But then the least sophisticated consumer, Judge Park, reads the as of the date of this letter language and says, what do you mean as of the date of this letter? But that part of the language in the letter is the same as Taylor, is it not? Yes. So can you, I guess, continue with the statement? Sure. I think that that to answer your first question, there are actually two differences. So you've got the substance of the letter itself, which is this prominent itemization of this interest and fees being $0, which is not in the Taylor letter. So I think that that's difference number one on a factual level. And then on a substantive level, Taylor was really about the idea of an omission. Okay. So the idea that the debt collector had somehow, at least the plaintiff had alleged that the debt collector had somehow alleged, failed to put things in the letter that it was supposed to. That's not what I'm arguing here. I'm not arguing an omission. I'm not saying that the debt collector omitted anything. And I think that's the second distinction to answer your first question from Taylor. I'm saying that what they included, this as of language, is completely superfluous. It has no place in this letter whatsoever. It's harmful. I'm sorry? Is it deceptive? I believe so, Judge Pooler. And I think to kind of answer your first question about why I believe you should accept the facts in Taylor is I think Judge Kugin, who is certainly no friend to the FDCPA, even in his own cases where he rules in favor of consumers, he had these identical facts. He had this itemization, Judge Park. He had this interest and this so-called noninterest charges of being $0 before him. And he looked at and I think that's important. And also, Judge Pooler, in Taylor, although Islam wasn't actually cited in Taylor, if you look at the docket, the appellate brief and the appellant lost, the person standing here lost, but in the appellant brief, they actually cited Islam. So the Second Circuit actually had that case before them and just didn't decide for whatever reason to talk about it. And one of the things that that did not do. But Islam didn't have the benefit of Taylor. I'm sorry? Islam was before Taylor, right? That's correct. But there has been a – but the same judge has had, I believe you pronounce it as Medizadi, I'll say, and that was after Taylor, and he ruled the same way. And I think the point is that had this Court wanted to abrogate Islam, they certainly could in Taylor. They had that case before them. They knew about it, I mean, just by a basic Westlaw search, but in the appellant's brief, they also talked about Islam. So had the judge wanted to – had this Court wanted to abrogate Islam as advocated by Frontline, they certainly could have done so, and they decided not to. And the facts here, Judge Pooler, to answer your first question, are in line with Islam, and I believe that this Court should go the same way and reverse the district judge's opinion. What is the harm here, where there's actually no interest or fees accruing? So I think, again, Judge Kugin and Islam outline what the harm is, Your Honor. And Judge Groves, I apologize. Joe Groves. Judge Groves. The harm is, and in my line of work I see this all the time. So a client comes to my office and they don't just have one problem, okay? They don't just have a credit card debt. They've got medical bills, they've got student loans and car bills. And when you line all those bills on your dining room table at the end of the month and you're deciding which ones to pay first, you're going to look at this one that seems to incate that interest and all these other fees are going to accrue when they're really not, and you think they're not because you know that it's static, and then you say, you know what, I'm going to pay this one first as opposed to the five others. That's the harm, Your Honor. But it says zero, zero fees, zero interest on this one. Sure. And I think that one of the things that Frontline brings up is a good point. That very well may be true, okay? That may be a true statement, but that doesn't mean that there's another way of looking at it. And so the other way of looking at it is that this may go up, that I see these zero fees being zero dollars in one part of the letter prominently displayed, but then at the end I see, as of the date of this letter, it might increase. And so I say to myself, maybe it will increase. So in terms of materiality, which is essential in the Second Circuit, the materiality is that when I'm deciding between five different bills to pay, I'm going to go with the one that I think is misleadingly telling me that it's going to increase when it's not. Thank you. You've reserved three minutes for a bow. We'll hear from Frontline Asset Strategies. Good morning, and may it please the Court. My name is Jacob Cohn, and I am counsel for Frontline Asset Strategies. This is a case that is squarely governed by Taylor. Taylor is precedent. Taylor rejects the argument that was adopted by the Court in Islam. There is no daylight here. The only difference that they want to grab onto is the fact that all the other information, other than current balance due, indicates the static debt. And that is a distinction without a difference. I mean, we start with, we could basically follow Judge Calabresi through three cases, and it answers this. The first is Avila, which Your Honor authored, and that says if you have a dynamic debt, you can't say current balance without giving the Avila safe harbor language. It says it's moving. Then you go to Taylor, and Taylor says, this is, this is, Judge Calabresi actually wrote that one. And he completely rejects the idea that there is a subtle incentive argument, as was found in Islam. And he says, he writes for the Court, that the only harm Taylor and Klein suggest a consumer might suffer by mistakenly believing that interest or fees are accruing on a debt is being led to think that there is a financial benefit in making repayments sooner rather than later. This supposed harm falls short of the obvious danger facing consumers in Avila. Okay? And then we go on to DeRosa, and Judge Calabresi is on that panel for a per curiam non-precedential opinion that says, yes, that's what Taylor means. And if it's a static debt. But Taylor came after Islam, correct? Taylor's after Islam. So they could have said Islam was wrong, as counsel just argued. They, they could have. Trying to do so. But that, that's hardly a basis for reading Taylor and saying anything other than it says. I agree. And then you get to Metazadeh and you read that. It's actually a month after Taylor. Taylor's not cited. But that's a different question that's not right before this Court is, if you have a static debt, but you put Avila warnings and it says it might be a moving target, does that constitute an, an FDCPA violation? I don't know. That's not before the Court. It's not right. That's basically my argument. If anybody has any disagreement or, or question as to whether or not Taylor is binding precedent on this. What are the two lines in your letter, interest zero, whatever is the other? What did that contribute to? It's, it's accurate information accounting for the debt. And it's information that in their own brief, they say, would lead the unsophisticated consumer, least sophisticated consumer to think this is from page 10 of their, their brief, think the balance set forth in the front line letter is static italics. However, she would then read the, as of the date of this notice language and think that it's dynamic. And the, as of the date of this notice is what's answered by Taylor. They concede that if anything, providing the zero interest and, you know, zero fees is helpful to reinforcing that it's a static debt. And that is the argument they made below. And it seems that I filed a rule 28 J letter the other day to bring to the court's attention, the new decision out of the seventh circuit and cone V delta outsource group that perfectly says current balance is not misleading and lawyers can, can twist themselves into pretzels to try to make it misleading. And that's just not so because you end up with a reductio ad absurdum where you end up saying that the word balance do means, you know, could be implied to be current and could be implied to be, you know, misleading. And that that's just not that in response to, to my 28 J letter, they seem to have banded it and said, well, no, the current balance do is okay. But the problem is the zero interest accrued and zero fees assessed, which is completely contrary to their argument in this court and below. And if they want to make that it's waived and it's wrong. But if it's a static debt, then what's the point of putting in the language as of the date of this letter, there could very well have been a payment made that has not been received, that has not been applied. It's accurate. But again, I think that that is meant to be to address any retroactive balance, not a future balance. Well, it would make it dynamic as opposed to static. It is a dynamic to reduce it. It's never going to increase. And again, Taylor stands for the proposition that even if you can read it conceivably to suggest that it might increase in the future, that is not a material issue. That is what Taylor flatly rejects. So the idea that you say current due today or the balance due, which implies that it's due as of the date the letter went out, is not misleading, is a matter of law under the Second Circuit binding precedent of Taylor. I have that's my argument. If you have any further questions, otherwise I'll yield back my remaining time. Thank you. Thank you, Your Honor. Mr. Wolff, you have three minutes for rebuttal. Judge Goves, I think you asked the most pertinent question to Mr. Cohn, and that's what's the purpose of it. And he gave one answer, but there's certainly a plausible other answer, that it was in there either negligently, right, they didn't really know what they were doing, or it was done for business purposes because they said to themselves, you know what, Mr. Wolff might be right, there might be five different bills from five different creditors that this person has to pay, let's get ours to the top of the list and let's put this language in there. Or maybe there was just a strategic reason. Maybe there was some reason that we're not thinking of. What would you have the letter say in place of that? Judge Park, I think, number one, I mean, I can certainly answer that question. I'm not sure it's my obligation to tell them what to put in. I mean, that's certainly something for Congress to decide. But maybe they could have just said, here's your balance. Why put anything that has temporal? And what if there was a payment in the mail that it wasn't reflected in there? Then it would be misleading. I mean, that's a different set of facts. And I don't think that I need to – I mean, I can certainly answer that question and it may very well be misleading. And if there's a letter like that, when I get back to my office, it's something that I could think about. But I don't think that prohibits this Court from reversing this decision. And Mr. Cohn can't answer that question. Why is it in there? And if his answer – Well, I guess it's a problem if you're asking us to find that what's in there is misleading and if we take it out, it's misleading. Then we're sort of lost. Well, I can appreciate that, but I don't think that that's my job today, Your Honor. I mean, I think that I can look at this – that this Court can look at this particular letter, and maybe this is a trilogy. Maybe this is Avea and Taylor slash DeRosa, and this is the third one. But this is a totally different set of facts than what was in Avea, right? Avea was a dynamic debt, so that's number one. That's not the facts here. This is a static debt. Number two and two and a half are Taylor and DeRosa, and that's a set of – So you're saying this is a static debt, but they try to imply that it's dynamic? That's right. Is that your argument? Yes, Your Honor. By putting zero interest, zero charges, they're implying that it could be something other than zero? No, that's – I mean, Your Honor, that's statutory in New York State. So that itemization is statutory. So what I'm saying is – is temporal, is this as-of-this-date language. So to go back to Judge Park, I don't know if I necessarily need to tell them what they need to do to make their letter better, right? My job as a consumer advocate is to tell them what – why it's wrong. And the as-of-this-date is completely superfluous. There is nothing in the FDCPA to – that requires them to put that in there. If it was dynamic, then obviously, you know, Avea may apply, and there may be this – the Miller Safe Harbor language that they have to put in. But that's not the facts here. There's totally multiple ways of looking at this letter, and there's just no good reason for them to put those temporal conditions in here. Thank you, Your Honor. I thank you both. We'll reserve decision.